RENDERED:  NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0230-MR

KAENJANT L. SMITH                                                         APPELLANT

v.
APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE MICHAEL O. CAPERTON, JUDGE
ACTION NO. 19-CR-00018

COMMONWEALTH OF KENTUCKY                                   APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Kaenjant L. Smith appeals from the Laurel Circuit

Court's order revoking her probation and imposing sentence, arguing the

Commonwealth failed to comply with the requirements of Kentucky Revised

Statutes (KRS) 439.3106.  We vacate and remand as the circuit court made

insufficient factual findings to support the revocation.

On March 2, 2018, Smith was pulled over by the Laurel County Sheriff's Department while driving a 2012 Chevrolet Equinox which had previously been reported stolen by Linda Vanhook. On January 18, 2019, Smith was indicted for: (1) receiving stolen property of $500 or more, but less than $10,000; (2) not having her license in her possession; (3) operating a motor vehicle with an expired operator's license; and (4) being a persistent felony offender in the second degree (PFO-2) based on being convicted of facilitation to manufacture methamphetamine and sentenced to five years of incarceration on January 4, 2013.

Smith entered into a plea agreement and on September 17, 2019, the judgment and sentence on plea of guilty was imposed in accordance with the Commonwealth's recommendation. The circuit court sentenced Smith on count one to five years of incarceration, enhanced to ten pursuant to count four for being a PFO-2, to be probated for ten years, dismissed counts two and three, and ordered restitution be paid to compensate Vanhook for damage to her vehicle.[1]

On February 3, 2020, the Commonwealth filed a motion to revoke probation, the body of which stated in two sentences that it was requesting

---

[1] It appears Smith's probation was set at ten years pursuant to KRS 533.020(4), as this length of time was deemed necessary for Smith to complete paying $5,700 of restitution to Vanhook. The payment schedule required Smith to make an initial payment of $500 and then $200 per month.

revocation because Smith failed to abide by the terms of her probation by failing to make restitution payments as ordered.

On May 21, 2020, a Probation and Parole Officer filed an affidavit requesting that Smith's sentence of probation be revoked and that a warrant be issued for her arrest. The officer stated that Smith violated her probation as follows:

> Absconding – Kaenjant Smith failed to report as instructed on 03/12/2020, and now on 04/09/2020 or any date thereafter. This Officer has called the last phone # given by Ms. Smith trying to get up with her only to discover that all phone #'s have been disconnected. Also this Officer was unable to do a home visit due to the Covid-19 virus, but has had contact with Ms. Smith['s] family and discovered that she was not living at the last address reported to her officer. This Officer has checked JusticXchange and called the local hospital. Subject is not incarcerated or hospitalized at this time, and all efforts to locate her have been exhausted.

On January 13, 2021, the circuit court held Smith's probation revocation hearing via Zoom. Smith's counsel stipulated to the violation of probation, acknowledged the serious nature of absconding from probation, and requested that Smith be given a six-month sanction of incarceration and continued on probation, with the understanding being that this was her final opportunity and if she violated again, her probation would be revoked. Smith's counsel noted that Smith had a three-month-old child.

The Commonwealth opposed any graduated sanctions, indicating that Smith had made no efforts to comply with the conditions of her probation in absconding for the previous eleven months until her arrest a month prior, made no effort to pay restitution, and "did nothing" with the opportunity that probation afforded her.

There was some discussion of Smith having a three-month-old child, and whether this child was conceived while she was absconding. There was also discussion about Smith's prior criminal history, including that: she had not been arrested for anything while on probation; she was a PFO-2 with that prior felony being facilitation to manufacture methamphetamine; and she was probated on her previous felony but then revoked and served her sentence. The circuit court observed that Smith had already been revoked on her prior felony and knew what jail was like.

Smith testified and asked for another chance, explaining that she needed to get back to her child. She stated that the last time she reported for probation was in February 2020. She acknowledged "I absconded . . . I was pregnant and I was scared. I was terrified." She also stated that she had "no excuse" for absconding.

The circuit court ruled from the bench as follows:

> Well, we have a prior probation violation. I mean I . . . I really don't see what we're learning here. I don't really

see that she can learn. The defendant stipulates a violation. The court does in fact find a violation. There is a current PFO and a prior probation violation which we violated back in 2011. Impose sentence, thank you.

The written judgment and sentence of imprisonment was entered on January 15, 2021. The circuit court's findings in full were:

1. Defendant was probated by order of this Court upon conditions set out in said Order of Probation.

2. Defendant has willfully and without excuse violated the conditions of said probation as stated in the Affidavit of Tip Smith as follows:

    a. The Defendant absconded from Probation and Parole.

3. Defendant was duly and properly served with notice of this hearing.

Smith argues on appeal that the circuit court: (1) failed to make findings required by KRS 439.3106(1); (2) failed to consider graduated sanctions under KRS 439.3106(2); and (3) abused its discretion by revoking her probation.

We review the circuit court's decision to revoke probation for abuse of discretion. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014); *Helms v. Commonwealth*, 475 S.W.3d 637, 644 (Ky.App. 2015). "[W]e will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the

-5-

facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky.App. 2015).

KRS 439.3106 provides in relevant part as follows:

(1) Supervised individuals shall be subject to:

 (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

 (b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

"KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked." *Andrews*, 448 S.W.3d at 780.

For purposes of review, rather than speculate on whether the court considered KRS 439.3106(1), we require courts to make specific findings of fact, either written or oral, addressing the statutory criteria. A requirement that the court make these express findings on the record not only helps ensure reviewability of the

-6-

court decision, but it also helps ensure that the court's decision was reliable. Findings are a prerequisite to any unfavorable decision and are a minimal requirement of due process of law.

*Lainhart v. Commonwealth*, 534 S.W.3d 234, 238 (Ky.App. 2017) (internal quotation marks and citations omitted). We note that "conclusory statements on the preprinted forms, related to the criteria in KRS 439.3106(1)" are "not sufficient to meet the mandatory statutory findings necessary to revoke a defendant's probation." *Walker v. Commonwealth*, 588 S.W.3d 453, 459 (Ky.App. 2019). *See Helms*, 475 S.W.3d at 645 (explaining "[i]f the penal reforms brought about by HB [House Bill] 463 are to mean anything, perfunctorily reciting the statutory language in KRS 439.3106 is not enough.").

In reviewing the circuit court's decision to revoke Smith's probation, we must consider and answer two intertwined questions: "Whether the evidence of record supported the requisite findings that [the probationer] was a significant risk to, and unmanageable within, [her] community; and whether the trial court, in fact, made those requisite findings." *McClure*, 457 S.W.3d at 732.

Smith's first argument is that the circuit court failed to make findings required by KRS 439.3106(1). Smith argues the requisite findings are absent from both the circuit court's oral and written findings, noting "[n]ot once during the January 13, 2021 hearing are the words 'risk,' 'danger,' or 'community' ever

-7-

uttered by the government or the trial court" and "[t]he trial court's written order is devoid of any statutory findings as well."[2]

The Commonwealth generally argues that the circuit court made sufficient oral findings because:

> Whether a person can be rehabilitated in a community setting is synonymous with whether that person can be managed in the community. And whether a person is likely to reoffend if not in custody is synonymous with whether that person is a significant risk to the community. In essence, the trial judge found that Smith had a bad record for both.

The Commonwealth also argues that the circuit court made a finding to the effect that Smith's failure to abide by a condition poses a significant risk to prior victims or the community at large because "[a] probationer cannot be managed in the community when she cannot be supervised. Smith posed a risk to the community and could not be effectively managed there."

We agree that absconding is a serious probation violation and that such a violation *could* be sufficient to establish that Smith was a significant risk to, and unmanageable within, her community. *See Compise v. Commonwealth*, 597

---

[2] Smith admits that this argument was not specifically preserved for appeal and requests palpable error review. As noted in *Walker*, 588 S.W.3d at 459, the failure of a court to make any findings, either written or oral, as to whether the probationer's violation constituted a significant risk to prior victims or the community at large and that the probationer could not be appropriately managed in the community, if true, would satisfy the palpable error standard of review.

S.W.3d 175, 182 (Ky.App. 2020) (noting that "a defendant who will not cooperate with the conditions of her supervision may indeed constitute a significant risk to the community at large and be unmanageable in the community.").

However, after reviewing the circuit court's oral and written findings, we conclude that the circuit court failed to make such findings. Rather than making perfunctory findings echoing the statutory language, it made no findings addressing the necessary criteria in KRS 439.3106(1) at all. The circuit court did not specifically find Smith to be any risk, let alone a significant risk, to either Vanhook or the community as a whole. *See Compise*, 597 S.W.3d at 182 (vacating revocation of Compise's pretrial diversion because "[t]he circuit court never made a finding that Compise was a *significant* risk. While the circuit court may have intended to make such a finding, it was never articulated."). While Smith did abscond, there was no evidence that she committed any new crimes while on probation, which could militate against such a finding.

Similarly, although this is a closer issue, the circuit court never found that Smith could not be managed in the community. While certainly the circuit court's comments about Smith's failure to learn could imply that she could not be managed in the community, graduated sanctions could perhaps have provided a means of teaching Smith to follow the requirements of probation.

While perhaps the circuit court might think that Smith could not handle ordinary probation, pursuant to KRS 446.010(20), a "graduated sanction" can include "electronic monitoring; . . . and short-term or intermittent incarceration[.]" Perhaps options such as these would have been effective, especially if combined with an order empowering probation and parole to be able to use graduated sanctions with Smith as guided by 501 Kentucky Administrative Regulations (KAR) 6:250.[3]

Although the Commonwealth would like us to "squint" at the oral findings and find them to satisfy the requirements of KRS 439.3106(1) as implied in what the circuit court did say, this requires inferences upon inferences. However, as noted in *Lainhart*, 534 S.W.3d at 238, express findings are needed for us to engage in proper review. Therefore, we must vacate and remand for an appropriate decision.

As we have already determined that the circuit court did not make appropriate factual findings and the revocation must be vacated, we need not address Smith's second and third arguments. We do so to clarify that these

---

[3] While absconding cannot be addressed through graduated sanctions, a failure to report and other minor violations can. *Compare* 501 KAR 6:250 Section 2, which deems absconding to be a "[v]iolation[] which shall be returned to the releasing authority[,]" with Section 4 which provides that failing to report is a minor violation. Perhaps if Smith faced consequences for minor violations, such correction might prevent more serious violations.

claimed errors in and of themselves would not require that Smith's probation revocation be vacated, had sufficient factual findings been made.

Smith's second argument is that the circuit court erred by failing to consider graduated sanctions. Smith argues that despite her argument for a six-month sanction, the circuit court determined that because Smith agreed to a ten-year sentence in her plea agreement that this should be her punishment.

This argument is not well taken. Having reviewed the probation revocation hearing, it is apparent that the circuit court was concerned that Smith had not learned anything about the consequences that would follow from failing to abide by the conditions of probation and that was why her probation needed to be revoked, rather than based upon the sentence that had previously been imposed. It is well established in *Andrews*, 448 S.W.3d at 780-81, that circuit courts retain discretion to decline to impose graduated sanctions. Additionally, as noted in *McClure*, 457 S.W.3d at 732, "[n]othing in the statute or in the Supreme Court's interpretation of it *requires* the trial court to impose lesser sanctions prior to revoking probation." We do not think that the circuit court failed to consider imposing a graduated sanction but instead disagreed that a six-month sanction would be appropriate here.

Smith's third argument is that the circuit court abused its discretion by revoking Smith's probation, raising several potential problems. Smith argues that

the circuit court's "decision was arbitrary because Smith's probation was revoked for a common violation and, seemingly, her criminal history." Smith argues that it was not clear in the probation revocation hearing that Smith only had one prior felony conviction and not two, and that her criminal history cannot be a basis for revocation as it was known at the time she was placed on probation. Smith also raises concerns that "it does appear that the trial court considered Smith's pregnancy negatively and insinuated that she should not have gotten pregnant and had a child. Any decision by the trial court wherein a woman's pregnancy is considered negatively is inherently arbitrary and fundamentally unfair." Finally, Smith argues there was insufficient evidence to revoke based solely upon her stipulation and the Commonwealth's failure to call any witnesses and failure to claim Smith was a danger or risk to the community.

We note that *Andrews*, 448 S.W.3d at 780, authorizes circuit courts to consider a probationer's past criminal history, opining that while such "criminal history could not be the sole basis for his revocation, it was appropriately considered when assessing the risk posed by his continued probation." We are confident that the circuit court considered more than just Smith's prior criminal history in deciding to revoke her probation. Based on our review of the probation revocation hearing, we do not believe that there was any confusion as to what Smith's prior criminal history was, only whether she had previously served

-12-

probation on her prior charge, with this confusion being remedied during the exchanges between defense counsel, the circuit court, and the Commonwealth. While Smith's pregnancy was discussed, we do not believe that it impacted the circuit court's ultimate decision. We believe that Smith's stipulation when combined with the affidavit from Probation and Parole provided a sufficient basis for revocation if appropriate findings had been made, at least as to the charge for absconding. While it is unclear whether Smith's stipulation of violation was intended to cover a violation for failure to pay restitution or not, there was no evidence as to such a violation and we note that an inability to pay restitution could offer a defense to that violation. *See Compise*, 597 S.W.3d at 181.

Accordingly, we vacate the judgment and sentence removing Smith from probation and remand for the Laurel Circuit Court to make findings as to whether the violation of Smith's probation for absconding constituted a significant risk to her prior victims or the community at large and whether Smith cannot be appropriately managed in the community pursuant to KRS 439.3106(1) or whether alternative sanctions were appropriate under KRS 439.3106(2).

ALL CONCUR.

BRIEF FOR APPELLANT:

Kelly Kirby Ridings
London, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Perry T. Ryan
Assistant Attorney General
Frankfort, Kentucky